Good morning, your honors. Charles Fleischman appearing for the appellant. This case is an ERISA case. The standard of review was abuse of discretion in the court below. This court's review of the case is de novo. And what you have is four doctors who found that my client was not disabled, only one of whom actually examined her. All the other examining and treating doctors found her not disabled, except for Dr. Babajanian, who was never asked. But the one doctor that examined her and found her not disabled found her not disabled on the basis that there was no swelling in her hands and no synovitis. Of course, two days later, she went to another doctor. She went for a consultation with another rheumatologist, Dr. Babajanian's, and he did find that swelling in the hands. And this was never dealt with by the other three doctors. Now, the first, the second IME guy, the one that actually examined her and found that there was no swelling, he didn't know about the finding two days later, so I can't fault him for not commenting about it. But the other three doctors, they all saw that Dr. Babajanian's findings of two days later where they found the to me that when you hire record-reviewing doctors and they don't review all the records, you've got an arbitrary and capricious decision if you follow their recommendations to stop paying benefits. Well, didn't the review panel indicate that they were familiar with all of the You mean the three doctors? Yes. Yes. But if they were familiar with him, then why didn't they ever mention him? Why didn't they ever discuss Dr. Babajanian's findings of swelling? Certainly that you had to have some explanation if you're going to rely on Dr. Srinivarsan, whatever his name is, the second IME doctor, saying that there's no swelling. And two days later, a doctor says, well, I find swelling. You've got to somehow explain how is that? What's the explanation? You just can't ignore the second doctor, Dr. Babajanian. And that's just exactly what the other three doctors did. Also, the second IME doctor never saw the first doctor's, the first IME doctor's medical report. You're talking about Dr. Srinivarsan? Srinivarsan never saw, was it Werewish? Whatever, I think that's his name, never saw his report. He's the IME doctor that the defendants first sent her to. And he said that she's totally disabled from all occupations. We know that Dr. Srinivarsan never saw his report because he lists all the doctor's reports that he reviewed. And those reviews begin with Dr. Chen, whose report is dated September 12, 2012. And Dr. Werewish wrote his report on August 30, 2012. So for some reason, Edison or Sedgwick never bothered to show the second IME doctor the first IME doctor's report. So he never saw that. Strangely, the other three doctors, except for Dr. Payne, two of the other three doctors that they hired who never examined her, never even mentioned Dr. Werewish's report. Dr. Payne mentions it. But never explains it, never discusses it, never tells us why we should disregard it. Unless you have any questions, I'd like to reserve the rest of my time. What is the remedy you seek from us? Well, it doesn't really make much difference, because if you say remand it back to the plan for another examination, that it was an arbitrary and capricious decision, and send it back to the plan for a re-evaluation, under Pannebecker and Montour, she's entitled to the benefits up until the time they decide, again, to cut her off. And if you say she's entitled to the benefits, they can cut her off, you know, as soon as it goes back to them. They can do another examination anyway. So it really doesn't make any difference. She's entitled to benefits up until, because it wasn't a denial ab initio, it was a denial after she had started receiving benefits, if you follow me. I do follow. Thank you. Thank you. Good morning. May it please the Court, Demery Ryan on behalf of Appellee Plan. The appellant is asking the Court to do what case law says it cannot, substitute the Court's judgment for that of the plan. And here, there's no dispute, we're under the abusive discretion standard, arbitrary and capricious. There's no kind of skepticism that would be appropriate. And so then, if the plan's decision is at all reasonable, then it must be upheld under Montour. Unless they fail to consider the things they needed to consider. That's correct. And I'm happy to address some of those points, because what the record is... Those are the points. Yeah, absolutely. So, you know, skipping over that is sort of not answering the question. Yes. So the record is clear that the doctors reviewed all the records. They commented specifically on Dr. Babajanian's. And so I think that that... They disregarded the SSI determination, right? Pardon me? They disregarded the SSI determination. That is not necessarily true. And I think that there's important distinctions there. They don't say. They don't explain. They don't discuss. Well, the requirement is that the denial letter give the reasons, an analysis of why the decision doesn't apply. And what's very important to remember here is that in contrast of the evidence, like in Montour, where the decisions were contemporaneous, here the decisions were two and a half years apart. And so the evidence had developed a lot in those two and a half years, both the exams, treating physicians, labs, x-rays, range of motion study. And so under the Takata case, the court found that under those circumstances where the reviewing doctors, where there was an independent medical examination, that the plan was not required to give a, you know, chapter and verse comparison of the two cases. But they're required to grapple with it. Isn't that what the case law says? They have to explain in some way how that... what weight they gave that and why they gave it that sort of weight? They can't just mention it and fail to actually deal with it, can they? Well, the letter says that the Social Security Administration decision that had been made two and a half years prior was based on perhaps different records, different standard of review, and listed those reasons, articulated the reasons. And that's the standard that's required, articulating the reasons. And under Takata, there's no need to detail the reasons distinguishing the decision, but simply to address them. And the fact that the records had developed... That was a summary, wasn't it? It was just a rather summary statement. It didn't appear to address the actual bases of disability that was found. In the denial letter? It's correct that the denial letter summarized it. But the denial letter also applied what the plan had found, took into account the more recent facts and evidence that were in front of the plan when they made the decision two and a half years after the Social Security Administration made its decision.  What can you point to that shows how the plan actually weighed and considered what the Social Security Administration's decision was? Well, the appeal denial letter says that it recognizes the fact that the benefits had been approved by Social Security. It recognized that they didn't know what the basis for that approval was, and so took into account that there would be different evidence. You say they didn't know what the basis of that approval was. Well, shouldn't they have known? Shouldn't they have checked into that? Well, as a practical matter, they did have the same evidence in front of them. So, for example, the medical records that existed at the time of the Social Security decision were also in front of the plan at the time of the appeal and denial. And so we know that they reviewed the same records that were in front of the Social Security. All of the same records? Well, those records that were in existence in 2011, plus all the evidence that had developed in the meantime. And what's key here is that plaintiff's conditions were susceptible to improvement. And so she actually started a new treatment in 2013, and all of this developed evidence was now in front of the plan. Counsel says, for instance, that the new IME, Dr. Sinavasing, did not mention the previous IME's doctor report, Dr. Wyrick. That is correct. You said that they considered all of the previous medical records. Where is the evidence that they considered Dr. Wyrick's report? So a couple of things on that, Your Honor. In the first place, just because Dr. Sinavasing, the second IME, doesn't specifically mention the previous IME, doesn't mean that he didn't consider it. So we're just supposed to guess or assume maybe he did without any evidence of that? Not at all, Your Honor. But what we do see also is in the panel review, the three additional rheumatologists who reviewed the records, they all specifically, they did review those records, including the Wyrick IME that was earlier. And what's important to note is that, again, Dr. Wyrick, in that initial 2012 IME, he said she could take new medications and specifically recommended there be a new examination two years later because her condition could change. And that's exactly what happened. And so the updated information is what is far more important. The question is not what conditions does this individual have, but can she, what restrictions does she have and do they impact her ability to do her job? And so this isn't like the Saloma case or the Saffron case where there was no independent examination. This was an in-person examination. There were a range of motion studies. Dr. Sinavasing did his in-person evaluation and reached conclusions about what this individual was and was not able to do, what her restrictions were. And so that's why it's more reasonable to rely on that updated information that included new medications and changes in her situation. Would you discuss the fibromyalgia? Absolutely, Your Honor. It seemed to me they were looking for objective evidence of disability, but fibromyalgia doesn't have those. Her other conditions do. Correct. I agree with Your Honor that there's no objective test for fibromyalgia. The question, again, is not whether she had fibromyalgia. All of these doctors agreed that there was a diagnosis of fibromyalgia. The question is how does that condition impact her ability to do the job? And that's why it's important that as in the Takata case and as in the Jordan case where there were independent medical in-person examinations, the independent medical examining doctor was able to form an opinion about what impact that had on her ability to do her job. And under the Takata case, where the doctors had the in-person review, considered what the physician said, and in Takata and Jordan, those were fibromyalgia cases as well. Under the abuse of discretion standard, that is enough. It is enough for the judges to do that and form opinions and then decide whether or not this individual could do her job. Thank you, Jennifer. Thank you, Your Honor. If there are no other questions, I appreciate your consideration. With regard to the Social Security, counsel said that they had the reports of the Social Security Administration when they made their decision, but we know that they didn't. There's a letter, it's S.E.R. 58, from Social Security which lists the medical records that the Social Security Department had with regard to Ms. Cruz Baca, and not one of those records is in the administrative record. So they knew these records existed, but they didn't have them and they didn't go after them, and they told her in numerous letters, if we need information, we'll ask you for them, otherwise we'll get it ourselves. So they didn't have these records and they knew they existed and never went out to get them. Also, they completely ignored her back. She has that spondylolisthesis and that was completely ignored. Dr. Srinivasan said that, well, he wrote that he saw her pain, but he never explained why her pain, when she was sitting, would not prevent her from, would not inhibit her ability to work. Also, nobody ever commented on, they say they read Weyrich's report, nobody ever commented on his limitations on her, that she can't sit and stand for more than three hours in an eight-hour workday. I submit it on that, unless there are any questions. Thank you, counsel. In case this argument will be submitted, the court will stand in recess for the day. Thank you.
judges: Reinhardt, Kozinski, Berg